UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN HALEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MACY'S, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-06033-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 61, 63 |

Pending before the Court are two motions to dismiss filed by Defendant Macy's West Stores, Inc. *See* Dkt. Nos. 61, 63. For the reasons detailed below, the Court **GRANTS IN PART** the motion to dismiss for failure to state a claim and otherwise **DENIES** the motions in their entirety.

## I. BACKGROUND

This putative class action arises out of an alleged pricing scheme by Defendant to mislabel its merchandise with false or inflated "original" or "regular" prices to induce customers to purchase "on sale" merchandise based on a perceived bargain. *See* Dkt. No. 57 ¶¶ 1–2, 5–7 ("amended consolidated complaint" or "ACC"). Named Plaintiffs Todd Benson, Job Carder, Zoreh Farhang, Kristin Haley, and Erica Vinci allege that they each purchased at least one item from a Macy's store in reliance on the original or regular price reflected on the product's in-store signs or price tags. *See id.* ¶¶ 17–26. Now on the basis of these purchases, they seek to represent a putative class of California consumers against Defendant, alleging violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"); and the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

On July 7, 2017, the Court granted Defendant's first motion to dismiss in part, finding that Plaintiffs had failed to identify their purchases and the statements they relied on in making those purchases with sufficient particularity, and that they also failed to adequately explain why the statements were false or misleading.[1] *See* Dkt. No. 56 at 3–6. In response to the Court's order, Plaintiffs filed an amended consolidated complaint on July 28, 2017. Dkt. No. 57. Defendant now seeks to dismiss the ACC under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. The Court addresses each motion in turn.[2]

## II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A. Legal Standard

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) where the Court lacks subject matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1). The defendant may either raise a facial or factual challenge to subject matter jurisdiction. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In a facial challenge, the Court's inquiry is limited to the allegations in the complaint, whereas in a factual challenge, the Court may look beyond the complaint. *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.*; *see also Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007). Where jurisdiction turns on disputed factual issues, the Court may resolve those differences itself, unless the issue of subject matter jurisdiction is "intertwined" with the merits of the claims. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004);

---

[1] The Court also dismissed Defendants Bloomingdales and Macy's Inc. because Plaintiffs did not allege that they purchased products from those entities or that either entity controlled the pricing structure for Macy's West Stores, Inc. *See* Dkt. No. 56 at 3. Plaintiffs did not include either entity in their amended consolidated complaint.

[2] On September 1, 2017, Defendant filed requests for judicial notice in support of its motions to dismiss. Dkt. Nos. 62, 64. On September 26, 2017, Plaintiffs also filed a request for judicial notice in support of their opposition to the same motions. *See* Dkt. No. 76. Because the documents do not inform the Court's analysis, the parties' requests for judicial notice are **DENIED AS MOOT**.

*see also St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("The district court obviously does not abuse its discretion by looking to [] extra-pleading material in deciding the [12(b)(1) motion], even if it becomes necessary to resolve factual disputes.").

**B. Analysis**

Defendant contends that Plaintiffs lack Article III standing and that, accordingly, the Court lacks subject matter jurisdiction over the action. Article III, section 2 of the Constitution limits the jurisdiction of federal courts to actual cases or controversies. *See* U.S. Const. art. III, § 2, cl. 1. To establish Article III standing, and thus the Court's subject matter jurisdiction, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, — U.S. —, 136 S.Ct. 1540, 1547 (2016).

**i. Injury-in-Fact**

First, Defendant argues that none of the five Plaintiffs suffered any injury-in-fact to support Article III standing. The Ninth Circuit has stated that Article III's injury-in-fact requirement is easily satisfied "when . . . [p]laintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so . . . ." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104, n.3 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (quotation omitted).

**a. Purchases**

Defendant first challenges the existence and nature of Plaintiffs' alleged purchases from Defendant. According to Defendant, it did not find evidence to support the existence of some of Plaintiffs' alleged transactions, some Plaintiffs returned their items for a full refund, and others purportedly had actual knowledge of Defendant's pricing practices prior to making their purchases. *See* Dkt. No. 61 at 7–8. In support of this argument, Defendant has proffered an affidavit from Joe Lavender, an employee of Macy's Systems and Technology Inc. *See* Dkt. No. 61-2. In his position as Director of Stores Selling Technology, Mr. Lavender is responsible for the system that records all transactions on registers in Macy's stores across the country. *Id.* ¶ 1. Mr. Lavender looked through this system to identify the sales records associated with the receipt

numbers Plaintiffs identify in the ACC. *Id.*¶¶ 1–2, 5, 7–13.

Mr. Lavender states that he could not find a sale in 2015 corresponding to Plaintiff Benson's receipt number. *See id.* ¶ 7. Rather, the receipt number corresponds to a purchase made in February 2016. *Id.* ¶ 8. Mr. Lavender also states that the receipt number for Plaintiff Vinci corresponds to a transaction where the in-store register was converted to "ringer" mode to ring up a sale. *Id.* ¶¶ 5–6; *see also id.*, Ex. 1. The receipt number did not, however, identify the actual sale. *Id.*

The Court does not find that Mr. Lavender's affidavit, on its own, undermines or otherwise compels the Court to reject Plaintiffs' allegations that they purchased mislabeled merchandise at Macy's. To the contrary, Mr. Lavender's non-exhaustive search suggests that Plaintiffs Benson and Vinci have purchased items from Macy's. The transaction that Mr. Lavender identified for Plaintiff Benson corroborates the allegation that Plaintiff Benson "is a regular shopper at Macy's" and has purchased at least one INC item from Macy's. *See id.* ¶ 10–12; *see also id.*, Ex. 5. Similarly, that the register was in "ringer" mode suggests that Plaintiff Vinci did make a purchase that day. Mr. Lavender even suggests that Plaintiff Vinci's actual purchase transaction may be listed under a different number as "a separate transaction." *See id.* ¶ 6.

Defendant next points out that Plaintiff Carder's receipt number indicates that he returned some items for a full refund. Dkt. No. 61-2 ¶¶ 7–8; *see also id.*, Exs. 2–4. However, the receipt does not establish that he returned all the items he purchased that day, and instead confirms that Plaintiff Carder made purchases from Defendant. *Id.* That the receipt purchases are not identical to the allegations in the complaint does not undermine Plaintiffs' injury-in-fact showing at this stage. Critically, Plaintiffs' theory in this case is that Defendant's misleading pricing practices were widespread and consistent, and "permeated every item" Plaintiffs purchased. *See* ACC ¶ 30 ("In all instances, Macy's posted sale price is compared to a fictitious 'original' or 'regular' reference price."); *see also* Dkt. No. 74 at 4.

Lastly, Defendant attacks the merits of Plaintiffs' case by stating that at least some of the items Plaintiffs purchased were sold at the original or regular price before and after Plaintiffs' transactions. This argument, and Mr. Lavender's affidavit in support thereof, is at best

4

conclusory, and in any event, too "intertwined" or "intermeshed" with the merits of this case to support a motion to dismiss at this stage in the litigation. *See Safe Air*, 373 F.3d at 1039; *Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 38–39 (9th Cir. 1978). The key factual dispute in this case is whether Defendant's original or regular prices were false or misleading, and the Court declines to determine that ultimate merits question at this time.

### b. Knowledge

Defendant further argues that several Plaintiffs were not actually deceived because they had knowledge of Defendant's pricing practices before they made their purchases. Defendant states that Plaintiff Vinci worked at Macy's and contends that Plaintiff Carder had a close relationship with Plaintiff Vinci such that her knowledge of Defendant's pricing practices can be imputed to Plaintiff Carder as well. *See* Dkt. No. 61 at 2–3. Defendant also posits that Plaintiffs Farhang and Haley made their purchases solely for the purpose of this litigation, and therefore, had knowledge of Defendant's pricing practices. *See* Dkt. No. 80 at 7–8. The Court is not persuaded.

Defendant relies on Plaintiff Vinci's LinkedIn Profile to suggest that she had knowledge of Defendant's pricing practices because she worked at an in-store Michael Kors boutique. *See* Dkt. No. 61-1, Ex. 2. Defendant further notes that at the time of her employment, Michael Kors was involved in an unrelated false advertising case. *See* Dkt. No. 61 at 2. Plaintiff Vinci's employment history, however, does not establish or even suggest that she had knowledge of any pricing practices. The record is simply devoid of any evidence about what information she was privy to in her role at Michal Kors. Defendant's suggestion that Plaintiff Carder had knowledge of Defendant's pricing practices is even more attenuated as it is derived from a Facebook screenshot, which shows that he is friends online with Plaintiff Vinci. *See* Dkt. No. 61-1, Ex. 2. Although this may suggest an avenue for Defendant to probe in discovery, it is simply not evidence of Plaintiff Carder's knowledge of Defendant's pricing practices.

Similarly, Defendant's only evidence about Plaintiff Haley's knowledge is that she purchased an ornament from Macy's four days before filing this action. Although suggestive, this does not establish that she had knowledge of Defendant's pricing practices. And Defendant's

5

argument that Plaintiff Farhang was anticipating litigation because she documented her purchase is similarly misplaced. Consumers may research and document their purchases and compare with other items without anticipating litigation or having knowledge of the pricing practices at issue in this case.

The Court notes that nothing in this order prohibits Defendant from raising a standing argument later in the litigation following discovery and the identification of relevant evidence.

### ii. Redressability

Defendant further contends that Plaintiffs lack standing because their alleged injuries would not be redressed by a favorable decision. *See* Dkt. No. 61 at 9–11. Although styled as a lack of Article III standing, Defendant's argument appears limited to Plaintiffs' standing to seek injunctive relief. Defendant states that Plaintiffs are not at risk of being deceived in the future. *See id.* at 9. After briefing on this motion was completed, the Ninth Circuit issued its opinion in *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1108 (9th Cir. 2017), deciding the district court split regarding whether injunctive relief is available to previously deceived consumers in false advertising cases.

*Davidson* involved the advertising and sale of pre-moistened wipes that the plaintiff alleged were falsely marketed as "flushable." 873 F.3d at 1107. The Ninth Circuit reasoned that some set of circumstances must exist in which injunctive relief is available to a consumer who learns that a label is false after purchasing a product. *Id.* at 1115. Accordingly, it reversed the district court's dismissal of the injunctive relief claims, finding that the plaintiff had "properly alleged that she faces a threat of imminent or actual harm by not being able to rely on [the defendant's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id.* at 1113. In light of *Davidson*, the Court finds that Plaintiffs' allegations that absent an injunction they cannot rely on Defendant's advertisements in future, *see* ACC ¶¶ 54, 64, 70, 79, are sufficient to allege standing to seek injunctive relief.

\*   \*   \*

Accordingly, Defendant's motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

6

## III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Legal Standard

Dismissal is also appropriate under Rule 12(b)(6) where the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Rule 9(b) imposes a heightened pleading standard for claims that "sound in fraud." Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

### B. Analysis

This is Defendant's second motion to dismiss under Rule 12(b)(6). The Court granted its first motion in part, finding that Plaintiffs had to allege additional detail regarding the identity of the products purchased; the false or misleading statements they relied on in making their purchases; and how the advertised original or regular prices were false. *See* Dkt. No. 56. Defendant contends that Plaintiffs failed to address these three issues in the ACC. Defendant also raises, for the first time, an argument that § 17501 of California's False Advertising Law is void for vagueness.

///

///

7

### i. Sufficiency of Allegations

#### a. Purchases

Defendant states that, as with Plaintiffs' prior complaint, the ACC does not identify the products that Plaintiffs Vinci and Carder purchased from Macy's with sufficient particularity. The ACC alleges, as did the prior complaint, that Plaintiff Carder purchased "products including several Maison Jules and Club Room items." ACC ¶ 25. And the ACC alleges that Plaintiff Vinci purchased "clothing items," including one "sports clothing item." *Id.* ¶ 26. Although the Court found these generic allegations insufficient, *see* Dkt. No. 56 at 3–4, the ACC now cites the purported receipt numbers for the relevant transactions, *see* ACC ¶¶ 25–26. And at the hearing on the pending motions, Plaintiffs conceded that the Court could — and should — look to the underlying receipts for additional information about Plaintiffs Vinci and Carder's purchases. *See* Dkt. No. 88 at 13:3–10; *see also* Dkt. No. 75 at 1–2.

With the inclusion of Plaintiff Carder's receipt number, the Court finds that Plaintiffs have supplied sufficient detail about his transactions for Defendant to identify and defend against them. However, as discussed above, Plaintiff Vinci's receipt number merely states that the register was put in "ringer" mode. *See* Dkt. No. 61-2 ¶¶ 5–6; *see also id.*, Ex. 1. The receipt does not provide any detail about the "sports clothing item" she purchased that day, or any other purchases she may have made. Plaintiffs suggest "that information can be provided, if in fact, Macy's does not actually have it." Dkt. No. 75 at 2. However, this ignores Plaintiffs' burden at the pleading stage. Moreover, the Court has already granted Plaintiffs an opportunity to amend their complaint to add this information, and they have now failed to do so for a second time. Accordingly, the Court finds that Plaintiffs have failed to allege sufficient facts about Plaintiff Vinci's purchases for her claims to survive Defendant's Rule 12(b)(6) motion.

#### b. Misleading Statements

Defendant next argues that Plaintiffs do not identify what false or misleading statements they relied on when making their purchases. The Court disagrees. The ACC alleges that "in all instances" both in-store signs and price tags misrepresented the original or regular price of Macy's merchandise. *See* ACC ¶¶ 29–30. It further alleges that that a sales clerk told Benson his shirt

was being "offered at a 25% discount from the regular price and the discount was identified on the sales tag for the shirt." *Id.* ¶ 23. Haley saw signs near the jewelry counter that represented discounts between 30% and 70% off the regular price as well as a "false price comparison" on the "sales tag" that identified the "'original price' as $60.00 and a sale price that was reduced to $17.99." *Id.* ¶¶ 21–22. And in making her purchase, Plaintiff Farhang relied on in-store signs that said "merchandise was being offered at 'up to 70% off the regular price'" and the price tag that stated the regular price of the rug was $12,000. ACC ¶ 17. Looking at the ACC as a whole, the Court finds that Plaintiffs have sufficiently alleged which false and misleading statements they relied on in making their purchases.

### c. Falsity

Lastly, Defendant contends that Plaintiffs do not clearly allege how Macy's original or regular prices were false or otherwise misleading because they offer no factual basis to support their theories that: (1) Defendant did not sell the products at the original or regular prices; and (2) other merchants did not sell merchandise of like grade and quality at Defendant's advertised prices. *See* ACC ¶ 4.

The Court finds that Plaintiffs have stated more than mere conclusory allegations based on "information and belief" that Defendant's original or regular prices were false or otherwise misleading. Plaintiffs identify an exemplar coffee maker that was advertised with a regular price of $149.99, but which all sellers on Amazon.com and the manufacturer's website offered for significantly lower prices. *Id.* ¶ 6. Several Plaintiffs also noted that the products they purchased continued to be on sale at the discounted, rather than original price, months after purchase. *Id.* ¶¶ 22, 24. Plaintiffs also point to Macy's pricing policy for its online merchandise, which states that "regular" and "original" prices "may not be based on actual sales of the item." *See id.* ¶¶ 31–36. Although not overwhelming support, the Court finds that Plaintiffs have supplied a sufficient factual basis to support their belief that Defendant's original and regular prices were false or misleading at this early stage of the litigation.

### ii. Injunctive Relief

As discussed above, *see* Section II.B.ii, the Ninth Circuit in *Davidson v. Kimberly-Clark*

*Corp.* determined that previously-deceived consumers nevertheless have standing to pursue injunctive relief. *See* 873 F.3d at 1113–15.

### iii. Section 17501

Defendant also raises a new argument that California Business & Professions Code § 17501 is unconstitutionally vague and should, therefore, be void and unenforceable. The statute states:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. The statute defines "prevailing market price" as the "worth or value" at "wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published." *Id.* Defendant nevertheless states that "prevailing market price" and "locality" are unconstitutionally vague.

"The void-for-vagueness doctrine reflects the principle that a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984) (quotation omitted). In evaluating a vagueness challenge, "the principal inquiry is whether the law affords fair warning of what is proscribed." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 (1982). "[T]hat [the state legislature] might, without difficulty, have chosen [c]learer and more precise language equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." *United States v. Powell*, 423 U.S. 87, 94 (1975). Rather, a statute satisfies due process if it contains reasonable standards to guide the conduct in question. *Id.* Moreover, the Court must construe the challenged language in the context of the entire law. *See Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1021 (9th Cir. 2010).

10

Few cases have addressed § 17501 and what it means to be the "prevailing market rate," or the "worth or value" of a product. Nevertheless, the Court and sellers are not without guidance. Section 17501 must be understood in the context of the FAL more generally, which prohibits "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. In a false advertising case, plaintiffs must "show that, by relying on a misrepresentation on a product label, they paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Animating § 17501, therefore, is a desire to prohibit false or misleading statements about former prices that misstate the "value or worth" of a product. The ordinary meaning of the term further guides the analysis as the Oxford English Dictionary defines "prevailing" as "[p]redominant in extent or amount" and "most widely occurring or accepted." *See* THE OXFORD ENGLISH DICTIONARY ONLINE, (2d ed., 1989). To be sure, the statute does not define "prevailing" any more granularly than it defines "misleading" or "false." That does not, however, render the statute unconstitutionally vague. *Cf. Knapp v. Art.com, Inc.*, No. 16-CV-00768-WHO, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016) (denying motion to dismiss § 17501 claim).

\* \* \*

Accordingly, the Court **GRANTS IN PART** Defendant's motion to dismiss for failure to state a claim as to Plaintiff Vinci and otherwise **DENIES** the motion in its entirety. Plaintiffs have had an opportunity to amend their claims as to Plaintiff Vinci already, and the Court is now convinced that they cannot allege facts to cure the defects identified in the Court's order. The Court therefore dismisses the claims as to Plaintiff Vinci without leave to amend. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (quotation omitted)).

### IV. CONCLUSION

Accordingly, the Court **DENIES** the pending motion to dismiss for lack of subject matter jurisdiction in its entirety, **GRANTS IN PART** the motion to dismiss for failure to state a claim as

11

to Plaintiff Vinci, and otherwise **DENIES** the motion.  Defendant has until January 12, 2018, to respond to the amended consolidated complaint.

**IT IS SO ORDERED.**

Dated: 12/21/2017

_Haywood S. Gilliam, Jr._
HAYWOOD S. GILLIAM, JR.
United States District Judge